BROWN *v.* MITTS.

1. TRIAL — CROSS-EXAMINATION — CONDUCT OF COURT — AUTOMO-
BILES.

In an action for injuries to plaintiff's automobile from colli-
sion with defendant's machine, where, on cross-examina-
tion of plaintiff by defendant's counsel, the court remarked
that it did not know what counsel was trying to get at,
but, on explanation, admitted the testimony, stating that,
if necessary, it would be stricken out later, and no motion
was made to strike it out, and the whole question was
submitted to the jury, under proper instructions, no error
was committed by the court.

2. SAME.

Where, during the cross-examination, counsel asked plaintiff
as to his ability to stop his machine in time to avoid the
accident, and, on objection, the court remarked, "I don't
know upon what theory Mr. Brown was obliged to stop
his machine at that time," the remark of the court did
not constitute error, because the evidence at that time did
not disclose any duty on the part of Mr. Brown to stop
his car.

3. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — HIGHWAYS AND
STREETS—AUTOMOBILES.

It is not, as a matter of law, the duty of a party to stop his
automobile when he sees another approaching him at a
rapid rate of speed, and he has a right to presume, where
there is ample room for the other party to pass in safety
to the rear or elsewhere, that he will do so.

4. TRIAL—TESTIMONY IN JUSTICE'S COURT—PREJUDICIAL ERROR—
EVIDENCE—WITNESSES.

Where plaintiff, on cross-examination, had already admitted
that it would have been possible for him to have stopped
his car before the collision, had he known there was any
necessity for so doing, no prejudicial error was committed
by the court in excluding his testimony in justice's court
on the same question.

5. SAME—CONDUCT OF COUNSEL.

Where, in objecting to defendant's counsel delaying the case,

plaintiff's counsel remarked that there was only $30 or $40 involved, and that a half day of the court's time amounted to more than the whole case, the court removed any prejudicial error by instructing the jury that a defeated party in the lower court has a right to appeal and it makes no difference to the jury as to the amount involved.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT— AUTOMOBILES.

In an action for injuries to plaintiff's automobile caused by a collision with defendant's automobile, no error was committed by the court in refusing to direct a verdict for the defendant because of plaintiff's contributory negligence, where the evidence was contradictory.

7. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

Where the charge as given covered, in substance, the requested instruction, no error was committed by the trial court in refusing to charge as requested.

8. SAME.

Where the requested instruction did not correctly state the applicable rule of law, no error was committed in its refusal.

9. SAME—APPEAL AND ERROR—ASSIGNMENTS.

Assignments of error should be specific, and an assignment to the charge as a whole is too general to receive attention.

10. SAME—AUTOMOBILES—NEGLIGENCE.

Where the court instructed the jury that if plaintiff saw defendant coming towards him at a rapid rate of speed, he had a right to act on his best judgment, and might assume that defendant would do what he could to avoid a collision, taken in connection with the further instruction that it was the duty of both parties, under the circumstances, to do what they reasonably could to prevent damage, but that neither party was bound to exercise the very best judgment, no error was committed by the court.

Error to Saginaw; Gage, J. Submitted June 18, 1915. (Docket No. 117.) Decided July 23, 1915.

Case by William A. Brown against Peter Mitts for damages to plaintiff's automobile. Judgment for plaintiff. Defendant brings error. Affirmed.

*Julius B. Kirby,* for appellant.

*Crane & Crane,* for appellee.

STONE, J. This is an action on the case to recover damages for injuries to the plaintiff's automobile, which he claims were caused by the negligent conduct of the defendant. In the city of Saginaw Germania avenue runs east and west and is intersected by Warren avenue, which runs north and south. About 1 o'clock p. m. on Sunday, May 18, 1913, the plaintiff owned and was driving a Reo automobile west, on Germania avenue. With him was one passenger, the witness Adam Sharp. At the trial it was the claim of the plaintiff that he was proceeding west on the north side of Germania avenue at about six or seven miles an hour, across Warren avenue at its intersection with Germania avenue, intending to stop at the Elks' Temple on the northwest corner; that as he was about 10 feet from the east line of Warren avenue he first saw the automobile of the defendant, driven by defendant, proceeding northerly on Warren avenue, in the center of the street, and on the street car track which ran along the last-named avenue; that defendant was running his car at the rate of 20 to 25 miles per hour at the time; that plaintiff sounded his horn three times to attract the attention of defendant; that defendant did not heed the warning, but was looking westward toward the post office, which was near the southwest corner; that finally the plaintiff called to the defendant, shouting a warning; that nevertheless the defendant drove at the same rate of speed into the car of the plaintiff, striking the rear wheel and injuring the fenders and running board and springing the axle. The plaintiff claimed that there was plenty of room for the defendant to have gone behind plaintiff. There was a conflict in the evidence, the defendant claiming that he was going north at the time of

the collision, but, instead of being in the center of the highway, or street, and on the street car track, which runs pretty near the center of Warren avenue, that he was on the east side and near the east curb of the street, and that he was proceeding at a rate of speed not to exceed 8 or 10 miles an hour, and claims that he had his machine under perfect control; that as he came to the corner of Warren and Germania avenues he did not discover the plaintiff's machine on account of some billboards which stood at the southeast corner on the lot line, and that suddenly the plaintiff's machine, driven by plaintiff, appeared in front of him on the south side of Germania avenue instead of on the north side; and he claimed that the reason he did not see plaintiff sooner was because the plaintiff was on the south side, or wrong side of the avenue, and that he did not see plaintiff's machine in time so that he could stop his machine. The declaration claimed careless and negligent driving by defendant and a violation of certain ordinances of the city of Saginaw, and also the statutory violation. The ordinances, which were introduced in evidence, provided that no person should run or propel an automobile on any street or avenue within the territory where this accident occurred at a higher rate of speed than 8 miles per hour. Another ordinance provided that vehicles should be driven in a careful manner, and with due regard to the safety and convenience of pedestrians and all other vehicles, and that vehicles should be kept on the right side of the street except when necessary to turn to the left in crossing or overtaking another vehicle; that drivers or operators of vehicles before turning, stopping, or changing their course should make sure that such movements could be made in safety, and that no vehicle should cross any main thoroughfare or make any turn thereon at a greater speed than one-half of the legal speed limit which was per-

mitted upon such thoroughfare. In its charge to the jury the trial court called attention to the ordinances, and also to section 7, subd. 1, Act No. 318, Pub. Acts 1909, entitled:

"An act providing for the registration, identification and regulation of motor vehicles operated upon the public highways of this State, and of the operators of such vehicles."

The issues in the case were submitted to the jury under a lengthy charge, and the plaintiff recovered a verdict and judgment for $33.40 and costs.

The defendant has brought the case here upon writ of error. Error is assigned upon certain rulings of the court in the admission of evidence, for refusal to give certain requests of defendant, and upon a portion of the charge of the court. We cannot better dispose of the assignments of error relating to the admission of testimony than to quote somewhat at length from the cross-examination of the plaintiff. That testimony was as follows:

"*Q.* (Had that been a street car instead of Mr. Mitts coming down at that same speed, could you have stopped so as not to have collided with the car?

"*Mr. Crane:* Objected to as incompetent.

"*The Court:* Objection sustained.

"*Q.* Could you have stopped your car when you seen him coming down there before you entered upon Warren avenue?

"*Mr. Crane:* I object to that. It was not incumbent upon Mr. Brown, under the rule of law, to stop his car.

"*The Court:* I don't know what counsel is trying to get at, I must say.

"*Mr. Kirby:* It is the duty of every man operating an automobile to exercise due care, and if he sees a car coming, and he can avoid a collision, that he has reason to think from a man who is coming so fast he should, and it is his duty to exercise care and not run in front of him.

"*The Court:* I don't think it is competent. I think it is the duty of a man who is running an automobile

down the street to pay attention to the law of the State and the city ordinances. If he violates it he is responsible for the violation of it. It is not the duty of the other man to assume he won't take care of his automobile and manage it in that way.

"*Mr. Kirby:* Do I understand a man is not chargeable with the exercise of due care even though the other man is violating the ordinance?

"*The Court:* He has a right to assume a man will avoid him on coming up toward him until such time as he sees an accident cannot be avoided. A man who is running too fast is the man who is responsible.

"*Mr. Kirby:* Exception. On cross-examination I claim I have a right to ask the witness whether he could not have stopped his car to avert this accident.)

"*Mr. Crane:* I have already stated my objection.

"*The Court:* What is the objection?

"*Mr. Crane:* I object to it as incompetent, there is no duty in the law making it incumbent upon Mr. Brown, under such circumstances, to stop his car. He had a right to assume that the other man was paying attention to his duties. What was going on in Mr. Mitts' mind Mr. Brown did not know.

"*The Court:* Well, I will admit it. I will strike it out afterwards upon the motion, if you can satisfy me it should not be in. I don't know upon what theory Mr. Brown was obliged to stop his machine at that time.

"*Mr. Kirby:* (We are not admitting that Mr. Mitts was violating the statute of this State.

"*The Court:* The testimony shows so far that he was. You have got to disprove that.

"*Mr. Kirby:* Note an exception.)

"*The Court:* Do you withdraw the objection?

"*Mr. Crane:* No.

"*The Court:* I allowed you to ask the question. Do you want an exception to that?

"*Mr. Kirby:* I want an exception to the last statement of the court that the law presumes, until there is something to the contrary shown, that Mr. Mitts was violating the law.

"*Mr. Crane:* There is no such statement.

"*The Court:* (I made no such statement. I said the testimony as it stands here now is that Mr. Mitts was violating that law, and he was also violating the ordi-

nance of the city. They have both been pleaded in this case.

"*Mr. Kirby:* I take exception to that statement.)

"*Q.* I understand I have a right to inquire, Mr. Brown, as to whether or not you could have stopped your automobile when you saw Mr. Mitts coming, and when you tooted your horn for him to stop, before you got on the track ahead of him?

"*A.* Before I came ahead of the intersection I never dreamed for a moment but what he would have control of his car and perform his duty.

"*Q.* When you first discovered him, or seen him coming you might then have stopped before you got into the path where he finally struck you?

"*Mr. Crane:* Same objection.

"*A.* I might have been able to stop my car, but I didn't think it was necessary to stop that time.

"*Q.* You could have stopped?

"*A.* I could have stopped my car. I assumed the right I had to cross the street regardless of Mr. Mitts, or anybody else coming across the street.

"*Q.* You could have stopped if you had desired?

"*Mr. Crane:* Same objection.

"*A.* If I had known what he was going to do. * * *

"*Q.* (Now, witness, did you continue running your car along here at the usual rate of speed of which you run your car, Mr. Mitts would not have struck you, would he?

"*A.* If I had been running the usual speed.

"*Mr. Crane:* Just a moment.

"*The Court:* Objection sustained.

"*Mr. Kirby:* Exception.)

"*Q.* (If you had not intended to stop right here as soon as you got over the track, but had been going on, you would not have had the collision, would you?

"*Mr. Crane:* I will have to object to that; it is a contingency nobody could tell about. Nobody can speculate upon what might have been done.

"*The Court:* I sustain the objection.

"*Mr. Kirby:* Note an exception.)   * * *

"*Q.* (If you had not slackened your car with the expectation of stopping at the Elks' Temple, I want to know, in your judgment, if Mr. Mitts would not have passed with safety?

"*Mr. Crane:* I object to that. There is no such testimony.

"*The Court:* I sustain the objection.)

"*Mr. Kirby:* Note an exception.

"*A.* When I came on to Warren avenue from Germania I was on the north side of the street. It is not true when I rounded this corner here I made the circle part upon Warren avenue near the billboard. No, sir; it is not true the collision occurred just in turning over north on the south line of Germania. I came right down Genesee street, straight here, it wasn't over 10 feet from the curb. I have turned shorter than that already. The machine was out probably 10 feet from the curb. The outside was out further. The car is, I should judge, about 5 feet wide. I was not out in the center of the street at any time. After I discovered Mr. Mitts I hollered at him. I had a right to expect him to slacken up. I expected him to slacken up.

"*Q.* (When you tooted your horn once and seen it didn't attract his attention, why didn't you exercise that care by stopping your car?

"*Mr. Crane:* I object to that; there is no duty on the part of Mr. Brown to do that.

"*The Court:* I sustain the objection.

"*Mr. Kirby:* Note an exception. It is my claim that every man must exercise due care.

"*The Court:* A man who approaches a crossing or intersection of a street is bound to get his machine under control. If he is running 25 miles an hour it is not under control. He is bound to have it under control so as not to interfere with traffic upon the street. It is a part of his duty.

"*Mr. Kirby:* The court assumes he was running at 25 miles an hour.

"*The Court:* Up to this time the only testimony is that he was.

"*Mr. Kirby:* I want it to appear that I claim the right to examine this man thoroughly as to the proposition that he could have avoided the accident by exercising due care and stopped after he saw the place of danger.

"*The Court:* I have not made any general ruling. Whenever you ask a question I will rule upon it.

*"Mr. Kirby:* I except to the ruling of the court. When I asked him if he could not have avoided the injury by himself stopping, the court sustained the objection to my question. I assume that I should not go into that matter any further.

*"The Court:* You may take your own course.

*"Mr. Kirby:* I assume that.

*"The Court:* You may assume all you are mind to in this case. But whenever there is a question asked I will rule upon it.

"Q. Mr. Brown, could you have stopped your car after you tooted your horn the first time and seen he continued to look west; could you have stopped your car before the collision?

*"Mr. Crane:* Before the question is answered, for the benefit of getting it upon the record, I want to object to that for the reason there is no duty upon the part of Mr. Brown to have stopped his car under the circumstances.

*"The Court:* As disclosed so far?

*"Mr. Crane:* As disclosed in this case.

*"The Court:* I sustain the objection.

*"Mr. Kirby:* Note an exception.)

"A. I said Mr. Mitts was about the center of Warren avenue when I first seen him. In the center of the street I mean. Yes; he continued right in the center of the street ` * * * the entire time I saw him until we collided. As soon as I got where I could look down the street I looked down Warren avenue to see if anybody was coming. I was not watching my speedometer; I was watching Mr. Mitts. The best of my judgment is 6 ·or 7 miles an hour.

"Q. (Didn't you testify in justice's court that you could have stopped your car when you discovered Mr. Mitts and saw he was looking west and wasn't paying any attention to his duty; you could have stopped your car before you got out on the track where the collision occurred?

*"Mr. Crane:* I object to that for the reason that I have objected to it before. It is merely an assumption or claim that he gave that testimony in the justice court.

*"The Court:* I don't see how you are going to contradict it. I sustain the objection.

"*Mr. Kirby:* Note an exception.)
"*Mr. Crane:* Any further question, Mr. Kirby?
"*Mr. Kirby:* I will let you know in a minute.
"*Mr. Crane:* You have already delayed this thing for 15 minutes.
"*Mr. Kirby:* Any time that this case can proceed, if you think it is all right, proceed.
"*The Court:* There is a great deal of time being taken up in this case—a matter of this importance, I think it ought to be expedited.
"*Mr. Crane:* (There is a sum involved of about $30 or $40, and the court and stenographer and the jurymen are here, and it costs more in a half day than this whole case amounts to.
"*Mr. Kirby:* Give me the benefit of an exception to this statement.
"*The Court:* If you are going to proceed, I would like to have you proceed.)
"*Mr. Kirby:* I ask the court to state to the jury that they should not consider the remarks of counsel as to what is involved in this suit, or what the costs may be.
"*The Court:* I will say to the jury, of course, a party who is defeated in the lower court has a right to appeal to this court and to take such course as he sees fit in the case; it is all under control of the judge. It makes no difference to the jury what the amount involved is, it is made our duty to try this case just the same as though there was $1,000 or $1,500 or more involved. I would like to have you proceed with the case. If you don't, I will take the matter in my own hands and exercise my authority.
"*Mr. Kirby:* I will repeat that I cannot continue until I have an opportunity to gather matters and know what I want to ask. I have got to have an opportunity to get my questions framed. That is all I am asking for."

Error is assigned upon the portion embraced in parentheses.

The following are requests of the defendant to charge, the refusal of which is excepted to:

"(1) If you find the plaintiff at the time he entered Warren avenue, going west, he was on the south side of the center line of Germania avenue, near the board

fence, and by reason thereof Mr. Mitts collided with him, he could not recover, because the law requires him to travel on the right side of the street at such a point, and if he violated the law in that respect he contributed to the injury.

"(2) I charge you that at intersection of streets, like Warren and Germania, persons approaching the same must have their machines under control and each have a right to expect the other to exercise due care at such places, and if you should find the defendant Mitts' negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained, if the proximate cause of the injury can be traced to the want of ordinary care and caution in the person injured or whose property is injured.

"(3) If you find the plaintiff could have stopped his car by the exercise of due care in time to have avoided the accident after he claims to have discovered Mr. Mitts paid no attention to his warnings and seemed to be looking in an opposite direction, then he could not recover because he was not exercising due care."

The court charged the jury in part as follows:

"If the plaintiff was on the north side of Germania avenue when he was coming across into Warren avenue, and had his machine under control, and was running not at a higher rate of speed than that testified by him—I don't know as there was any testimony which indicated he was running at a higher rate of speed—why then he was entirely within his rights, and if the collision occurred by the fault of Mr. Mitts, by reason of Mr. Mitts running his machine faster than the law permitted, or by his failure to stop his machine when he could have stopped it by paying attention to what he was doing, then the plaintiff would be entitled to recover for the injury which he suffered. If, on the other hand, Mr. ———, the plaintiff here, Mr. Brown, was not on the north side of Germania avenue, then he was on the wrong side of the street, and if by reason of his taking the wrong side of the street, he contributed to his injury in any way, to his damage in any way, then he could not recover even though Mr. Mitts was at fault. It was his duty to be

on the north side of the street, at the intersection of those two streets.

"Now, where two parties are suddenly confronted with an emergency, risk of collision, or if a party is on a street railway and imagines a collision is going to occur,. he has a right to act upon the information or the facts as they appear to them. They are not bound to act in the very best manner possible under the circumstances, as they might appear to others afterwards, but they are to act upon their best judgment under all the circumstances. That applies to this case in this way: (That if Mr. Brown coming across Warren avenue there at Germania, saw Mr. Mitts coming towards him at a rapid rate of speed, he had a right to act on his best judgment. He had a right to assume Mr. Mitts would do what he could to avoid a collision if he could do anything to avoid it, and that he would swing his automobile away from the line of the plaintiff's automobile, or check it, if it were possible to check it.) It is the duty of both parties, under circumstances like this, to do what they reasonably can to prevent damage. But neither party is bound to exercise the very best judgment; he must exercise such judgment as the circumstances appear to him to require, and he is excused from failing to take the very best course.

"I think the instructions which I have already given you are sufficient for this case, and all I am warranted in giving you in the case. There are other requests made to me that I think I am not warranted in giving under all the circumstances of this case. Really the questions involved are questions of fact more than law. I have endeavored to explain to you fully what the duty of each party was under the circumstances, and if Mr. Mitts violated his duty in any way, and by reason of his violation of his duty this accident occurred, why he is amenable to Mr. Brown, the plaintiff here, for such damages as he has suffered by reason of Mr. Mitts' negligence. If, on the other hand, Mr. Brown failed to take such action as he might have done to protect himself, or if he was on the wrong side of Germania avenue, or did other acts that contributed to this accident, then Mr. Mitts is not responsible. But I think I have already explained to you that Mr. Brown was not obliged to anticipate that Mr. Mitts would go ahead, if he was going ahead at the rate of speed that

he claims he was when he saw him coming down the avenue, or at an excessive rate of speed so he could not very well prevent a collision. He simply had a right to assume that Mr. Mitts was obeying the law."

The first six assignments of error relate to the rulings of the court, made in the course of the cross-examination of the plaintiff. We have copied the testimony at considerable length to show the latitude which was given to the defendant and appellant in the cross-examination of this witness. It is true that the court said at one point that it did not know what counsel was trying to get at, but when explanation was made by defendant's counsel the court admitted the testimony, stating that if it found it necessary, the same would be stricken out afterwards. No motion was made to strike this testimony out afterwards, and the whole question was submitted to the jury, we think, under a proper charge. We do not think the fact that the court made use of the expression, "I don't know upon what theory Mr. Brown was obliged to stop his machine at that time," constituted error, because the evidence at that time did not disclose any duty on the part of Mr. Brown to stop his car. It cannot be said that, under the law, it is the duty of a party to stop his car when he sees another approaching him at a rapid rate of speed, and there is ample room for the other party to pass him in the rear or elsewhere. The plaintiff was proceeding west, and the evidence is undisputed that there was ample room for the defendant to have passed in the rear of plaintiff's car, and we think that the plaintiff had the right to suppose that such course would be taken by the defendant, and we cannot say that his duty was to stop his machine at that time. We find no error in the remark of the court.

We have given enough of the proceeding to show that the defendant's counsel was permitted to cross-

187 Mich.—31.

examine the plaintiff at great length, and we find no error in the rulings of the court upon that subject.

The seventh assignment of error relates to the claimed testimony in the justice's court; and, while we think the trial judge might well have permitted the question to have been answered, we do not think the ruling constituted prejudicial error, for the reason that the plaintiff, upon his cross-examination, had not denied, but admitted, that it would have been possible for him to have stopped his car before the collision had he known that there was any necessity for so doing.

The eighth assignment of error relates to the remark of plaintiff's counsel as to the amount involved and the length of time the trial was taking. We think that the trial court, as we have already indicated, explained that matter sufficiently to the jury, and we see no prejudicial error in the conduct of the case in that regard.

The tenth assignment is based upon the refusal of the court to direct a verdict for the defendant, for the reason that under the undisputed evidence in the case the plaintiff was guilty of contributory negligence. We do not think the court erred in denying this motion.

The eleventh assignment of error relates to the refusal of the court to give defendant's first request to charge. As already appears from the portion of the charge quoted, the substance of this request was given, as was also the substance of request No. 2, which is the basis of the assignment of error No. 12.

The thirteenth assignment of error relates to the refusal to give request No. 3. We do not think that this request stated the applicable rule of law correctly, and there was no error in its refusal.

The fourteenth assignment of error is directed to the charge as a whole. We have examined the charge and find many rules of law which were correctly stated. This assignment is too general to receive any attention. Assignments of error should be more specific.

Assignment No. 15 relates to that portion of the charge which we have embraced in parentheses. We think, when taken in connection with the remainder of the charge, as quoted, there was no error in the instruction there given.

We find no prejudicial error in the record, and the judgment of the court below is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. MCALVAY, J., did not sit.